# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

THE PROCTER & GAMBLE COMPANY, :     Case No. 1:12-cv-552
                               :
          Plaintiff,            :     Judge Timothy S. Black
                               :
vs.                                   :
                               :
TEAM TECHNOLOGIES, INC., *et al.*, :
                               :
          Defendants.        :

## ORDER DENYING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT OF INDEFINITENESS (Doc. 91)

This civil action is before the Court on Defendants' Motion for Summary

Judgment of Indefiniteness (Doc. 91) and the parties' responsive memoranda (Docs. 97,

104, 114, 127, and 128).

## I.  BACKGROUND

Plaintiff alleges that Defendants are infringing three patents:  U.S. Patent No.

5,891,453 ("the '453 Patent"), U.S. Patent No. 5,894,017 ("the '017 Patent"), and U.S.

Patent No. 7,122,199 ("the '199 Patent"), which concern home tooth whitening products.

This civil action was originally brought only against Defendant Team Technologies, Inc.

("Team Tech").  (Doc. 1).  Defendant Clio USA, Inc. ("Clio") was added to the suit in

September 2012, and Defendant Brushpoint Innovations, Inc. ("Brushpoint") was added

in February 2013.  (Doc. 10; Doc 42).  The Court issued its Order on Claim Construction

on November 11, 2013.  (Doc. 71).

Defendants now move this Court for summary judgment that certain claims of the '453 Patent and the '017 Patent are invalid for indefiniteness because they include the claim term "substantially/almost unnoticeable when worn," on the basis that there is no dispute of material fact on the issue and Defendants have proven by clear and convincing evidence that a person of ordinary skill in art would not understand the bounds of those claims. (Doc. 91).

## II.    UNDISPUTED FACTS[1]

1. The '453 Patent was issued on April 6, 1999. (Doc. 91-2 at 2).

2. The '453 Patent claims priority on its face to a filing on June 6, 1997. (*Id.*)

3. The '453 Patent has 22 total claims. (*Id.*)

4. Plaintiff asserts that Defendants infringe Claims 1-3, 6-8, 9, 11, 18, and 21 of the '453 Patent. (*Id.* at 24).

5. The original claims of the '453 patent were rejected for obviousness under 35 USC § 103(a) over Schiraldi in view of secondary and tertiary references. (*Id.* at 102, 105).

6. The '017 Patent was issued on April 13, 1999. (*Id.* at 14).

7. The '017 Patent has 21 total claims. (*Id.*)

8. Plaintiff asserts that the Defendants infringe Claims 1-3, 7, 8-9, and 12 of the '017 Patent. (*Id.* at 24).

9. Claims 1 and 8 are the only independent claims of the '017 Patent that are being asserted by Plaintiff. All other asserted claims are dependent upon either Claim 1 or Claim 8. (*Id.* at 14-20, 24).

---

[1] (*See* Docs. 91-1 and 97-1).

10. The original claims of the '017 patent were rejected for obviousness under 35 USC § 103(a) over Schiraldi in view of secondary and tertiary references. (*Id.* at 116, 119).

11. Dr. Harald Heymann submitted an expert report on December 23, 2013. (*Id.* at 131-40).

12. In Dr. Heymann's first report, he describes his investigation into whether the Accused Products are unnoticeable when worn. To do so, he first applied the strip to his own teeth and looked in the mirror "at normal speaking distance (approximately 3-4 feet)" and "up close (less than one foot)." (*Id.* at 137-38).

13. Dr. Heymann also "instructed certain individuals to apply" the Accused Products. He then "observed their teeth at a normal speaking distance, both immediately after application, during the recommended 30-minute wearing period and at the end of that period." (*Id.* at 138).

14. In Dr. Heymann's Fourth Report, he was "asked to review certain portions of the expert report submitted by Dr. Abdul Gaffar." (*Id.* at 143).

15. Dr. Atwood submitted a first expert report on December 23, 2013 regarding infringement by the Accused Products. (*Id.* at 152-56).

16. Dr. Atwood agreed with and adopted the opinion of Dr. Heymann as it pertained to the "substantially/almost unnoticeable when worn" limitations of the asserted claims. (*Id.* at 154).

17. Dr. Atwood's Third Report was submitted on February 13, 2014. For this report, Dr. Atwood was asked to review the second expert report submitted by Dr. Abdul Gaffar. (*Id.* at 159).

18. Dr. Atwood disagreed with Dr. Gaffar's conclusions regarding the "substantially/almost unnoticeable when worn" limitation. Dr. Atwood stated that he maintained his "original agreement with and adoption of Dr. Heymann's opinions." (*Id.* at 165).

19. Dr. Gaffar submitted a report on non-infringement on January 27, 2014. (*Id.* at 170-82).

20. The Court issued a claim construction order in this case on November 22, 2013. (Doc. 71).

21. The Court construed "almost unnoticeable when worn/substantially unnoticeable when worn" as those terms appear in Claim 1 of the '453 patent and in Claims 1 and 8 of the '017 Patent to mean "not readily apparent to others when worn." (*Id.* at 3, 13).

22. The Court noted that "the specification refers to either visual or audio detection" in adopting the Plaintiff's proposed claim construction of these terms. (*Id.* at 13).

23. Plaintiff argued for the adopted construction based in part upon the concept that the invention is that the invention is designed to "permit the wearer to use the system during social discourse without interfering with the wearer's speech or appearance." (*Id.*)

## III.    STANDARD OF REVIEW

### A.    Summary Judgment

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

**B.    Patent Indefiniteness**

United States patents are presumed valid.  35 U.S.C. § 282.  Accordingly, patent claims are presumed to satisfy the definiteness requirement set forth in 35 U.S.C. § 112, ¶2: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention."[2]

The Supreme Court recently addressed the standard for indefiniteness of patent claims under 35 U.S.C. § 112, ¶2 in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).  Therein, the Supreme Court found that the Federal Circuit's formulations of the test for indefiniteness, under which a claim was indefinite if it was "insolubly ambiguous" or "not amenable to construction," were insufficient because they lacked the precision 35 U.S.C. § 112, ¶2 demands.  *Nautilus*, 134 S. Ct. at 2130.[3]  The Supreme Court held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with

---

[2] The Leahy-Smith America Invents Act (AIA), Pub. L. 112-29, 125 Stat. 284, made slight modifications to 35 U.S.C. § 112, including the addition of letter signifiers to each subparagraph of the statute.  Formerly referred to as 35 U.S.C. § 112, ¶2, the relevant law on indefiniteness is now known as 35 U.S.C. § 112(b).  However, because the Patents-in-Suit were filed before the enactment of the AIA in 2011, the former version of the statute applies.

[3] However, the Supreme Court also acknowledged that "[t]he Federal Circuit's fuller explanations of the term 'insolubly ambiguous' . . . may come closer to tracking the statutory prescription."  *Nautilus*, 134 S. Ct. at 2130.  For this reason, such explanations remain relevant to this Court's analysis.

reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124. Under this newly announced standard, a court's ability to assign some meaning to a patent claim cannot, alone, render the claim definite; a court must consider "the understanding of a skilled artisan at the time of the patent application[.]" *Id.* at 2130. As prior decisions have well established, patent claims must be precise enough to provide public notice of what is claimed. *See id.* at 2129 (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996)).

The new formulation of the indefiniteness standard "mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus*, 134 S. Ct. at 2129. Thus, a court's inquiry "must take into account the inherent limitations of language," because "some modicum of uncertainty is the 'price of ensuring the appropriate incentives for innovation.'" *Id.* at 2130 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732 (2002)). Thus, while patent claims must be sufficiently detailed to satisfy 35 U.S.C. § 112, ¶2, "an inventor need not explain every detail because a patent is read by those of skill in the art." *Wellman, Inc. v. Eastman Chemical Co.*, 642 F.3d 1355, 1367 (Fed. Cir. 2011); *see also Nautilus*, 134 S. Ct. at 2128 (quoting *Carnegie Steel Co. v. Cambria Iron Co.,* 185 U.S. 403, 437 (1902)) ("One must bear in mind, moreover, that patents are 'not addressed to lawyers, or even to the public generally,' but rather to those skilled in the relevant art.")

The issue of a claim's definiteness should not be confused with the separate issue of whether a claim is infringed. "The difficulty or complexity of the infringement analysis does not necessarily speak to whether a claim is definite or not." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1346 (Fed. Cir. 2010); *see also SmithKline Beecham Corp. v. Apotex Corp*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005) ("The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention"); *Invitrogen Corp. v. Biocrest Mfg.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (rejecting an indefiniteness argument when the defendant was "really talking about the difficulty of avoiding infringement, not indefiniteness of the claim"); *Marley Mouldings Ltd. v. Mikron Indus.*, 417 F.3d 1356, 1360 (Fed. Cir. 2005) (reversing a district court's finding of indefiniteness when "persons of experience in the field" would understand how to convert measurements to those units claimed in the patent, which was really a question of infringement). Thus, when the scope of the claim is clear, questions about determining infringement will not render the claims indefinite. *SmithKline*, 403 F.3d at 1341.

## IV. ANALYSIS

### A. Construction and Application of the Noticeability Limitation

A patent is invalid for indefiniteness only if its claims, read in light of its specification and prosecution history, "fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. This Court is mindful that, under *Nautilus*, the Court's ability to construe a claim limitation is not, by itself, dispositive of whether the limitation is definite. *See id.* at 2130. However, the ability of the Court and Defendants, their lawyers, and, most notably, their expert to construe the disputed claim term provides probative evidence that the scope of the claim was reasonably certain to be understood by persons of skill in the art at the time the patent applications were filed.

At the parties' urging, the Court reviewed the patents and the intrinsic record and was able to construe the claim term "substantially/almost unnoticeable when worn" (hereinafter "unnoticeable limitation"). (Doc. 71 at 13). At no point during the claim construction process did Defendants assert that the unnoticeable limitation was indefinite. (Doc. 98 at 108-18; Docs 67, 69, and 72). Indeed, Dr. Gaffar, whom Defendants contend is a person of skill in the art, reviewed the intrinsic record and provided his understanding of the meaning of the term. (Doc. 98 at 159-61). He submitted a declaration in which he agreed that the proposed construction that was ultimately adopted by the Court "would be acceptable." (*Id*. at 161). Dr. Gaffar's agreement with the Court's construction is strong evidence that the unnoticeable limitation is not indefinite. *Trading Techs. Int'l, Inc. v. eSpeed, Inc*., 595 F.3d 1340, 1358-59 (Fed. Cir. 2010) (affirming the lower court's determination that the claims were not indefinite and citing agreement by the defendant's expert with the court's definition).

Defendants, their lawyers, and their expert have consistently been able to construe and apply the unnoticeable limitation. Three sets of lawyers representing Defendants – the Nath lawyers, the Vorys lawyers, and Defendants' trial counsel – as well as Dr. Gaffar – have all understood the term, construed it as necessary, and applied it to the prior art and to the Accused Products. The Nath lawyers wrote an opinion letter analyzing the '453 and '017 Patents, using what they contended was the plain and ordinary meaning of the unnoticeable limitation. (Doc. 98 at 302-08; Doc. 98-1 at 1-24; Doc. 98-2 at 1-23; Doc. 98-3 at 1-21). The Vorys lawyers conducted a prior art search and applied the references to claims containing the unnoticeable limitation but never mentioned any alleged ambiguity in the term. (Doc. 98 at 280-301). Defendants' trial counsel were able to prepare validity and infringement contentions, applying the claim term to the alleged prior art and to the Accused Products. (Doc. 92-1 at 402-85). Finally, Dr. Gaffar applied the unnoticeable limitation in his second and third expert reports as part of his validity and infringement analysis, respectively. (*Id*. at 495-622; Doc. 98 at 188-257). Such analyses would not have been possible if the unnoticeable term failed to inform those skilled in the art about the scope of the invention to a degree of reasonable certainty.

Thus, because the Court was able to construe the term – with Defendants' agreement and the endorsement of Defendants' putative expert – and because three sets of Defendants' lawyers were able to construe and apply the claim term to analyze the

patents for validity and infringement, there is strong evidence that the scope of the limitation would be reasonably certain to a person of skill in the art after review of the claims, specification, and prosecution history. Defendants have offered no evidence to support a contrary conclusion.

## B.    Objectivity

The objective or subjective nature of a claim limitation is part of the indefiniteness inquiry. The Federal Circuit explained that "[a] claim term pinned solely on the 'unrestrained, subjective opinion of a particular individual purportedly practicing the invention' will not suffice." *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)). However, "absolute precision" of claim terms is not required, either. *Nautilus*, 134 S. Ct. at 2129. So long as those of ordinary skill in the art are informed of the scope of the invention to a degree of reasonable certainty, the claims are not invalid for indefiniteness. *Id.*

For example, in *Source Search*, the patent-in-suit claimed a method for internet shopping that included the term "goods or services." The district court construed the term as meaning "standardized articles of trade and performances of work for another." *Id*. at 1068. Before the Federal Circuit, the defendant (like Defendants here) argued that the court's construction introduced a subjective element such that a person practicing the invention would not be able to differentiate between "standard" and "non-standard"

10

"goods or services." *Id*. at 1076. The defendant (again, like Defendants here) did not offer any support for this position other than its conclusory statements and bald assertions. *Id*. The Federal Circuit rejected the argument, explaining that it judges indefiniteness "according to an objective measure that recognizes that artisans of ordinary skill are not mindless 'automatons.'" *Id.* at 1076-77 (citation omitted). Otherwise, the patent would have had "to list every possible good or service" to avoid indefiniteness. *Id*. at 1076. The court found that such detail was not necessary. *Id.* ("This court does not load the indefiniteness requirement with this unreasonable baggage"). Thus, because persons having ordinary skill in the art would possess an understanding that supplied an objective definition to the claim term, the court held that the claims were not indefinite. *Id*.; *see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 655 F.3d 1364, 1374 (Fed. Cir. 2011) (reversing a district court's finding of indefiniteness when variables necessary to produce the claimed "controlled environment" were well known in the industry and to those of ordinary skill in the art).

The court in *West v. Quality Gold, Inc*., No. 5:10-cv-03124, 2011 U.S. Dist. LEXIS 117689, at *22 (N.D. Cal. Sept. 16, 2011), reached the same conclusion. There, the district court was faced with the task of construing the terms "virtually indestructible" and "virtually indestructible during use" found in a patent claiming methods for manufacturing durable jewelry. *Id*. at *20. The defendant argued (as Defendants do in this case) that the claim was indefinite because the patent did not explicitly define "use"

or "normal use." *Id*. at *22. The district court acknowledged the defendant's point, but disagreed that the claim terms were indefinite because "one of ordinary skill in the art would know what standard wear and tear on jewelry looks like." *Id*.

Here, the term "almost/substantially unnoticeable to others when worn" is an objective term that is well understood by those of ordinary skill in the art. Those skilled in the art know what "substantially/almost unnoticeable" tooth whitening devices look like. (Doc. 98 at 120, 125-26, 261-62). During the prosecution of the '017 and '453 Patents, the Examiner observed the claimed invention and was "impress[ed]" that the tooth whitening strip "could not be seen" and was "substantially unnoticeable by others when worn." (*Id*. at 20, 38). Examiners are "assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art [.]" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., No. 1:11-cv-871, 2013 U.S. Dist. LEXIS 59379, at *29-30 (S.D. Ohio Apr. 25, 2013) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1304 (Fed. Cir. 2008)). The Examiner's reaction to and understanding of the claimed invention is further evidence that one with ordinary skill in the art understands the meaning of "substantially/almost unnoticeable when worn," and that a claim using such language informs one with ordinary skill in the art of the scope of the invention to a degree of reasonable certainty.

Moreover, the record shows that everyday consumers readily understand the concepts embodied in the unnoticeable limitation. In the Consumer Study commissioned

by Clio, the participants wore the Accused Products on their teeth and reported their observations.  (Doc. 92-1 at 187).  Those participants used the same words found in the patents and file histories to describe their experience with Accused Products: "Comfortable, unobtrusive experience in mouth, that people get used to quickly"; "Secures very well, does not slip around"; "Translucent, can talk easily, even go out"; "Does not shift around"; "Invisible to other people, not obtrusive"; "No difficulty in talking"; "Easy to speak, largely less noticeable"; "Translucent, largely less noticeable"; and "Could speak easily."  (*Id.* at 205-06, 210, 215, and 218).  These comments, untainted by litigation bias, show that the unnoticeable limitation is an objective term with boundaries that not only those of ordinary skill in the art, but also everyday consumers, easily understand.  *Accord Source Search*, 588 F.3d at 1076.

Defendants rely on two Federal Circuit decisions, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) and *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005), for the proposition that the unnoticeable limitation is a purely subjective term, but these decisions are inapposite.[4]  In *Halliburton*, the patent claimed a "fragile gel" having certain properties.  514 F.3d at 1246.  Those of ordinary skill in the art indisputably knew how to measure the claimed properties in order to evaluate infringement, but the results of those measurements would vary depending upon the test parameters employed.  Because the patent did not provide the specific test

---

[4] The Court notes that the Supreme Court cited *Datamize* for its use of an inadequate formulation of the test for indefiniteness.  *Nautilus*, 134 S. Ct. at 2130, n.9.  Because Defendants rely on *Datamize* for a different proposition, the Court will address it.

parameters, there was an inherent ambiguity as to the scope of the claims that could not be resolved. *Id*. at 1254. In *Datamize*, the claim term at issue was "aesthetically pleasing." 417 F.3d at 1348. The Federal Circuit found that the term was indefinite because it was "completely dependent on a person's subjective opinion." *Id*. at 1350. The "aesthetically pleasing" term in *Datamize* is like the terms "pretty" or "ugly," which require a subjective assessment of beauty, attractiveness, or artistic appeal. Subjective terms, without some objective anchor, "depend upon the unpredictable vagaries of any one person's opinion[.]" 417 F.3d at 1350.

The unnoticeable limitation in the '453 and '017 Patents, however, is quite different from the terms at issue in *Halliburton* and *Datamize*. Unlike *Halliburton*, the inventions claimed in Plaintiff's patents do not require complicated tests or procedures to determine if a strip is "substantially/almost unnoticeable when worn." (Doc. 98 at 138, 277). Unlike *Datamize*, the unnoticeable limitation is not at all subjective. Rather, the Court finds that the unnoticeable limitation it is much more like the objective terms "clean" and "dirty." While people generally evaluate whether something is "clean," "dirty," "pretty," or "ugly" by personal observation and perception, the concepts of "clean" and "dirty" have objective, readily understood meanings. People can easily recognize that an item is clean or dirty without referring to any complicated test or set of criteria. The same is true with respect to the term "substantially/almost unnoticeable when worn."

Defendants have failed to come forward with any evidence to support their contention that "substantially/almost unnoticeable when worn" is a purely subjective condition. Instead of evidence, Defendants offer speculation: "the strips when worn on a person with straight teeth may appear less noticeable than the same strip when worn [by] a person with crooked or missing teeth." (Doc. 91 at 3). They state – without any support – that "when worn on a person with healthy, white teeth, the strips will appear different than when worn by a person with stained teeth." (*Id.*) They also posit rhetorical questions: "[H]ow does one know when the delivery system is the same color of the teeth? How does one know when the system is substantially translucent[?]" (*Id.* at 10). Defendants' unfounded speculation and attorney argument is not evidence. *Source Search*, 588 F.3d at 1076 (rejecting "conclusory statements and bald assertions" of indefiniteness); *Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 179 (Fed. Cir. 2005) (rejecting indefiniteness claim when infringer "bases its indefiniteness challenge entirely on attorney argument" and "did not adduce any evidence to substantiate its claim of indefiniteness"); *WesternGeco L.L.C. v. ION Geophysical Corp.*, 876 F. Supp. 2d 857, 875 (S.D. Tex. 2012) ("Defendants' unsupported attorney argument fails to prove indefiniteness by clear and   convincing evidence"); *Cacace v. Meyer Mktg.*, 812 F. Supp. 2d 547, 561 (S.D.N.Y. 2011) ("[M]ere attorney argument is insufficient to establish invalidity based on indefiniteness").

Moreover, Defendants' speculation is irrelevant because it ignores the plain meaning of the claim term "substantially/almost unnoticeable when worn." It does not matter whether one person's teeth start out whiter than another person's teeth. The claimed system does not have to be completely invisible when worn, and subtle differences among users of the invention are irrelevant. This condition is well understood by those skilled in the art and everyday consumers alike. *Source Search*, 588 F.3d at 1076 (rejecting indefiniteness claim because a person of skill in the art would know the meaning of the term); *West*, 2011 U.S. Dist. LEXIS 117689 at *22 ("one of ordinary skill in the art would know what standard wear and tear on jewelry looks like").

Defendants also assert that the asserted claims are indefinite because the patents allegedly do not recite a test or standard to determine if an accused product satisfies the unnoticeable element of the claims. (Doc. 91 at 2, 8-12). This argument fails for at least two reasons.

First, Defendants' assumption that patents must recite a specific test or standard for determining infringement is incorrect as a matter of law. The Federal Circuit explained that "an inventor need not explain every detail because a patent is read by those of skill in the art." *Wellman*, 642 F.3d at 1367; *Source Search*, 588 F.3d at 1076 (noting that the Federal Circuit measures indefiniteness from the vantage point of a skilled artisan); *West*, 2011 U.S. Dist. LEXIS 117689 at *22 (finding that patents did not need to define the term because "one of ordinary skill in the art would know what standard wear

and tear on jewelry looks like").  Indeed, the Federal Circuit has expressly rejected the

notion that a patent must disclose a "standard" infringement test for it to be valid.

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1385 (Fed. Cir. 1986).

In *Hybritech*, the asserted patent related to assays using monoclonal antibodies having a

certain antibody affinity.  *Id.* at 1370.  The district court found the claims indefinite

"because antibody affinity cannot be estimated with any consistency."  *Id.* at 1385.  The

Federal Circuit reversed, explaining that even if there were "no standard set of

experimental conditions" to determine infringement, that was not enough to render the

claim indefinite.  *Id.*  Because one skilled in the art would know how to calculate

antibody affinity, "the claims, read in light of the specification, reasonably apprise those

skilled in the art and are as precise as the subject matter permits."  *Id.*  The Federal

Circuit held that, "[a]s a matter of law, no court can demand more."  *Id.*

Second, even if the unnoticeable term were subjective, the patents and file

histories disclose several objective criteria that can be used in determining whether the

unnoticeable limitation is met.  *Ethicon*, 2013 U.S. Dist. LEXIS 59379 at *30; *see also*

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 780-81 (Fed. Cir.

2002) (reversing summary judgment that claims were indefinite).  The patents teach that

the claimed inventions are "unobtrusive," and "permit the wearer to use the system

during social discourse without interfering with the wearer's speech or appearance."

(Doc. 92-1 at 9, 18).  The claimed delivery system may be substantially transparent.  (*Id.*

at 19).  It may also be "the color of the teeth" or "translucent."  (Doc. 98 at 42).  Unlike the prior art devices, the claimed invention is not bulky and does not restrict social discourse.  (Doc. 92-1 at 9).  The claimed invention can be used during periods of social contact.  (*Id*.)  In light of these teachings, this Court ruled that "almost/substantially unnoticeable when worn" means "not readily apparent to others when worn."  (Doc. 71 at 13).

These teachings and disclosures provide an objective anchor to aid application of the claim term.  The recited factors – bulkiness, transparency or translucency, color of teeth, and/or interference with the wearer's speech and appearance – can be considered in determining whether a product is unnoticeable when worn.  *Nautilus*, 134 S. Ct. at 2124 (instructing courts to consider claims "in light of the specification delineating the patent, and the prosecution history"); *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1368 (Fed. Cir. 2010) (finding that examples in the specification provided context and meaning for the claim term "readily installed"); *see also Ethicon*, 2013 U.S. Dist. LEXIS 59379 at *30; *All Dental*, 309 F.3d at 780. [5]

Plaintiff's experts referenced these objective criteria when they analyzed the Accused Products.  Defendants falsely assert that Plaintiff's experts "don't explain how or why [the Accused Products] are 'unnoticeable.'"  (Doc. 91 at 12-13).  Specifically, Dr. Heymann, a dentist with nearly 36 years of experience, applied the Accused Products

---

[5] The Court notes that the Supreme Court cited *Hearing Components* for its use of an inadequate formulation of the test for indefiniteness.  *Nautilus*, 134 S. Ct. at 2130, n.9.  The Court cites *Hearing Components* for a different proposition.

to teeth and observed the wearer to see if the system is readily apparent to others when worn. (Doc. 98 at 259-61). He applied the products to his own teeth and asked others to wear the products, observing the wearer from distances varying from normal speaking distance (approximately 3-4 feet) to up close (less than one foot). (*Id.* at 61-62). Dr. Heymann held conversations with the test subjects to determine if the products interfered with the wearer's speech or appearance. (*Id.* at 62). He further addressed Dr. Gaffar's criticisms of his opinions and explained how one of ordinary skill in the art would understand and apply the unnoticeable limitation to the Accused Products. (*Id.* at 276-78). Dr. Heymann explained that the limitation is not subjective because those of skill in the art readily understand what is meant by the limitation and would be able to apply it consistently. (*Id.* at 270, 272-73). He did much more than "simply disagree[]" with Dr. Gaffar, as Defendants contend. (Doc. 91 at 14).

Similarly, Dr. Atwood observed the Accused Products and found that they were thin and substantially transparent. (Doc. 98 at 121-25, 127-28). He applied the Accused Products to his own teeth and observed whether they were readily apparent when worn. (*Id.* at 125). Defendants mischaracterized Dr. Atwood's extensive rebuttal to Dr. Gaffar's opinions that identifies specific documents and deposition testimony and shows why the Accused Products are "substantially/almost unnoticeable when worn." (*Id.* at 131-38).

In sum, as the testimony cited above shows, the use of the objective factors

disclosed in the patent's specification and prosecution history can provide an anchor to aid understanding of the claim term, and the Court has been instructed to consider such factors in its indefiniteness inquiry. *See Nautilus*, 134 S. Ct. at 2124.

## C. Indefiniteness vs. Infringement

Defendants also contend that the disagreement between their expert and Plaintiff's experts as to whether the unnoticeable limitation is infringed by the Accused Products is evidence that the claim term is subjective. (Doc. 91 at 17). However, if a disagreement among party experts about whether an accused device infringes were evidence of indefiniteness, nearly every patent involved in litigation could be declared invalid. The Federal Circuit has explained that definiteness and infringement are separate inquiries. *Spansion*, 629 F.3d at 1346; *SmithKline*, 403 F.3d at 1340-41; *Invitrogen*, 424 F.3d at 1384; *Marley Mouldings*, 417 F.3d at 1360. "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline*, 403 F.3d at 1340-41. Consequently, the fact that the experts disagree about whether the Accused Product infringes is not relevant to this Court's indefiniteness inquiry.

Defendants have not provided evidence to show the absence of a dispute of material fact that the asserted claims of the '453 and '017 Patents are invalid for indefiniteness.

## V.     CONCLUSION

Accordingly, based on the foregoing, Defendants' Motion for Summary Judgment

of Indefiniteness (Doc. 91) is **DENIED**.

**IT IS SO ORDERED.**

Date:  9/15/14                                            _s/ Timothy S. Black_____
                                                          Timothy S. Black
                                                          United States District Judge